No. 34,127

BENJAMIN J. SHOPE and GAYE SHOPE, as Individuals and as Former Executors of the Estate of Jake H. Shope, Deceased, *Appellants*, v. J. E. SHOPE, *Appellee*.

(89 P. 2d 859)

Opinion filed May 6, 1939.

*Wilbur S. Jenks*, of Ottawa, for the appellants.

*Ralph E. Page*, of Ottawa, and *E. H. Gamble*, of Kansas City, Mo., for the appellee. (No brief was filed on behalf of appellee.)

The opinion of the court was delivered by

DAWSON, C. J.: This was an action by the beneficiaries and joint executors of the last will and testament of the late Jake H. Shope, of Meridian, Logan county, Oklahoma, against a claimant to an interest in his estate.

The testator died in Oklahoma on February 20, 1937. By his will he devised his entire estate to these plaintiffs, Benjamin and Gaye Shope, husband and wife. They, too, were residents of Meridian, Okla., and by the will they were named as joint executors.

The devised estate consisted chiefly of a 120-acre farm in Franklin county, Kansas, and the testator's interest as landlord in an unma-

tured wheat crop of twenty-three acres planted thereon in the autumn of 1936.

The will was duly probated in Oklahoma and an authenticated copy thereof was admitted to record in the probate court of Franklin county.

In their petition plaintiffs alleged that defendant was in possession of the Shope farm residence, and that pursuant to an agreement the remainder of the farm had been planted to spring crops of oats and kafir corn by third parties.

Plaintiffs alleged that defendant claimed some interest in the farm, which clouded their title, and which, they understood, was based on a claim that the testator had made an oral promise to defendant that if he and his family would come and live on the Shope farm and do the work and care for him and remain with him until his death defendant should receive the farm and all the testator's personal property. The petition continued:

"But plaintiffs say that the said Jake H. Shope never entered into any contract to leave the said farm or his personal property to the defendant, J. E. Shope, and they say that the defendant, J. E. Shope, has no right, title or interest therein."

Plaintiffs also alleged that sometime towards the end of the testator's life (date not shown) he became physically and mentally incompetent to care for himself and his property, and a guardian of his person and estate was appointed, following which a full settlement of all the business affairs of testator and defendant was effected, except as to the twenty-three acres of wheat which defendant had sown in the fall of 1936; and that as to it the testator and defendant had agreed that when it was ripe and harvested, and threshed and marketed, the expense thereof should be deducted from the proceeds and the net remainder divided equally between them. To attend to these necessary details concerning the wheat crop, plaintiffs asked for the appointment of a receiver (which was granted), and for a decree quieting their title to the farm and for half the proceeds of the wheat crop and for the landlord's share of the oats and kafir corn sowed on the farm in the spring of 1937.

Defendant filed an answer and cross petition, in which he admitted the appointment of a guardian for the person and estate of the testator by the probate court of Franklin county (inferentially that testator's personal occupancy of the farm had ended in November, 1936), and that he had died in Oklahoma, as alleged in

plaintiffs' petition. In other respects defendant's answer was a general denial.

In his cross petition defendant alleged that in 1929 he was a section foreman of the Missouri Pacific Railway Company and drawing a salary of $130 per month, and that the testator was then about ·sixty years of age and afflicted with palsy, and not able to properly feed and care for himself or to attend to his business, and that he had never married.

The cross petitioner alleged that in November of 1929 testator proposed to defendant that he would purchase and equip a farm and stock it if defendant would quit his railway job and make a home for him and operate the farm, and that during testator's lifetime defendant would get half of all the livestock and grain and produce sold from the farm, and at testator's death he would give defendant the farm "as well as all of the [testator's] personal property."

The cross petitioner further alleged that pursuant to· such agreement defendant quit his job as a railway foreman and removed with his family to a farm near Pomona, which testator had purchased, equipped and stocked, and that defendant carried out his part of the oral agreement from early in 1930 until November 28, 1936, at which time the testator left the farm, and that defendant was then ready, able and willing to continue to carry out his part of the agreement, but that without defendant's fault the testator was taken out of the state of Kansas and so remained until his death.

The cross petition concluded with a prayer for judgment on the alleged oral contract and for confirmation of defendant's title, and in the event defendant was adjudged to be the owner of any less interest in the farm that it be partitioned among its respective owners as their several interests might appear.

While this action was pending on the issues joined as above, defendant on July 13, 1937, filed a motion reciting that the wheat crop had been harvested and marketed and that the receiver had on hand the sum of $407.34 as the net proceeds thereof, and defendant prayed that the receiver be directed to pay him one-half of that amount.

On July 13, 1937, the court granted that motion in part and directed the receiver to pay to defendant the sum of $190 and that the balance in the receiver's hands should be held subject to further order of the court.

On August 16, 1937, plaintiffs filed a general denial as their reply and answer to defendant's answer and cross petition.

On September 20, 1937, defendant filed a motion asking that the trial of this cause, which had been set for September 23, be postponed for the reason that it was necessary to protect defendant's rights that he file suit in the district court of Logan county, Oklahoma, to set aside the probate of the testator's will, and he alleged—

"That the defendant is prepared to file such suit against the plaintiffs in this action and will do so.

"The defendant would show to the court that he is prepared to file such a suit and that he will file his amended answer in this cause within twenty days showing that such a suit has been begun in Logan county, Oklahoma."

By consent, this action was held in abeyance until the January, 1938, term of court, but defendant abandoned entirely whatever intention he may have had to file a contest on the probate of the testator's will in Oklahoma. Meantime plaintiffs filed a demurrer to defendant's cross petition on the ground (1) that it did not state a cause of action, and (2) because such cross petition in effect sought to contest the will of Jake H. Shope which had been duly probated in Oklahoma and admitted to record in the probate court of Franklin county as a foreign will and could not be contested in any Kansas court.

This demurrer was overruled on January 25, 1938. Thereupon a jury was waived and the cause was tried by the court. The parties adduced their evidence; their counsel argued and submitted the cause; and on February 28 the court found that plaintiffs were the owners of the farm, that their title thereto should be quieted, and that they should be put in possession. Judgment was entered accordingly, and the sheriff was directed to remove defendant from the premises and put plaintiffs in possession.

The journal entry recording this judgment was dated February 28, 1938, and concluded thus:

"It is further ordered, adjudged and decreed that the plaintiffs have judgment against the defendant for the costs of this action.

"The court retains jurisdiction to make such further orders as may be necessary with reference to the receivership in this case and the disposition of funds held by the receiver, Olin Minckley, the sheriff of Franklin county, Kansas, in this case."

On March 4, 1938, defendant filed a motion alleging that he had worked for the testator continuously from March 5, 1930, until his death on March 20 [Feb. 20], 1937; "that he has not received compensation for his services"; that defendant was entitled to a lien on the farm in dispute until his compensation was fully paid. He

prayed for an order permitting him to file a supplemental petition in this cause setting up such claim and that he might be heard thereon.

On March 21, 1938, the trial court filed a number of conclusions of fact, germane to the judgment theretofore rendered on February 28. These, in part, read:

"3. The early part of 1930 the said Jake H. Shope, deceased, purchased the herein described real estate together with improvements and farm machinery and a certain amount of livestock.

. . . . . . . . . . . . . .

"5. After the purchasing by Jake [testator] of the farm, he and Jerome [defendant], together with his family, moved thereon and began to operate the farm. Jerome did a good part of the farm work, but Jake appears to have busied himself about the place and did some of the work.

"6. The understanding between Jake and Jerome at the time of taking up the residence on the farm was that Jake and Jerome should share and share alike the produce of the farm and increase in livestock. They appear to have gone along amicably. Sometime in 1935, Jerome's wife and children left the farm and took up their residence elsewhere. After that Jake and Jerome continued to live on the farm as before and batched.

"7. Jake could not control his hands in a normal way and was probably afflicted with palsy. This physical condition made it necessary on occasions for him to have assistance in eating his meals and at other times. Help in this respect was given him by Jerome or his wife. As time went on Jake's physical condition deteriorated and he had less and less control over his hands.

"8. The latter part of 1936, Jake wandered from the farm and appeared at a neighbor's residence and eventually was taken to Ottawa by neighbors, and, after a hearing in the probate court of Franklin county, Kansas, was adjudged to be incompetent. So far as the evidence shows, Jerome did not take any part in the proceedings leading to the adjudication or show any interest in Jake.

. . . . . . . . . . . . . .

"10. I am satisfied that there was some kind of understanding between Jake and Jerome with reference to the personal property and the farm, but I am unable to determine from all the evidence just what that agreement was or to set out its terms in a satisfactory manner. I am unable to determine whether Jerome complied with the terms of the uncertain agreement. In view of all the facts, however, Jerome should receive some compensation in connection with the situation as a whole."

"CONCLUSION OF LAW

"Having failed to establish a contract certain in its terms, by clear and satisfactory evidence, the defendant, J. E. Shope, is not entitled to recover under his cross petition filed herein."

On March 22, 1938, the court made an order discharging the receiver, after awarding him $32.50 for his services and directing him to turn over the balance of moneys in his hands (apparently $326.10) to the clerk of the district court, and directing that officer

to pay therefrom to plaintiffs the sum of $195.17 and to defendant the sum of $5.17, and to retain the balance to await the further order of the court. On March 30, 1938, defendant filed with the clerk of the court his receipt for the sum awarded him pursuant to the order just mentioned.

On April 4, 1938, on the first day of the next term of court (G. S. 1935, 20-1004), the defendant's motion for a new trial (date of filing or contents not shown) was overruled, and the clerk of the district court was directed to pay the balance of the receiver's moneys in his hands to plaintiffs. But on the same date the trial court granted defendant leave to file an amended petition "within ten days from this date"—April 4, 1938.

Pursuant to the leave thus granted defendant filed an amended answer and cross petition pleading the matters on which issues had been joined and judgment rendered on February 28, with this addition—

"The fair and reasonable value of the services of this defendant in the performance of said agreement with the said Jake H. Shope from March, 1936, onward to date of the death of the said Jake H. Shope, over and above all that plaintiff received from said farm and from Jake H. Shope, was not less than $3,500."

On April 13 plaintiffs moved to strike the amended answer and cross petition from the files on the ground that the issues involved in the alleged oral contract had been adjudicated to a finality at the prior term of court, and that the additional allegation touching the reasonable value of defendant's services to the testator over and above his share of the crops and the other benefits was a substantial change of defendant's claim as theretofore pleaded and litigated to a finality and not permissible under the civil code, citing G. S. 1935, 60-759.

On May 16 plaintiffs filed a motion to dismiss the proceedings insofar as concerned them as executors for the reason that the estate of Jake H. Shope had been settled and its assets distributed and that they had been discharged of their executorship by the probate court of Logan county, Oklahoma, on April 15, 1938. In support of this motion plaintiffs cited G. S. 1935, 60-3216. Attached to their motion was a certified copy of the proper Oklahoma court order showing the settlement and closing of the estate and finding that executors had fully and faithfully discharged their duties as executors and releasing them from further liability.

This motion was presented and overruled on May 19, 1938, but at the same time plaintiff's motion to strike defendant's amended cross petition from the files, as amended on May 7, 1938, was sustained. "Said amended cross petition be and is hereby stricken from the files," is the recital of the journal entry of judgment, which, however, continued thus:

"And thereupon the court finds from the evidence that the defendant, Jerome Shope, should have and recover the sum of $930, because of services performed by him on behalf of Jake Shope during the time they were living together, as shown by the conclusions of fact on file herein.

"And thereupon the court orders, adjudges and decrees that the defendant, J. E. Shope, have judgment against Benjamin J. Shope and Gaye Shope as executors of the estate of Jake H. Shope for the sum of $930 on account of services performed by said J. E. Shope on behalf of said Jake H. Shope."

Within three days plaintiffs moved to set aside the judgment just recited for various reasons needless to set down in detail, but which included the following:

"Fifth . . . (b) Because said judgment is not supported by the evidence, and particularly, because no evidence was introduced showing the value of the property involved in the case or the extent of value of the services rendered by the defendant, J. E. Shope, or of the compensation received by J. E. Shope in the division of crops and increase livestock and the support of himself and his wife and children."

This motion was overruled on July 15, 1938, and on the same day plaintiffs appealed.

It has taken much space to summarize this case, but it will be unnecessary to consider in detail all the legal questions arising on the face of the record nor all of those urged in appellants' behalf. We simply note in passing that when the trial court gave judgment for plaintiffs on February 28, 1937, it apparently disposed of the lawsuit *in toto* except in respect to the receivership which had to do with the harvesting, marketing and disbursement of the proceeds of the wheat crop of 1936-1937. And while the court had discretionary power to change its judgment of February 28 during the then current term, it did not do so. It might seem that defendant's motion of March 4, 1938, setting up a claim for compensation was a matter which should have been presented to the probate court of Logan county, Oklahoma, as the trial court (at his own request) gave him ample time to do. Mayhap we should presume that the Oklahoma law governing the presentation of claims against an estate is the same as our own (*Werner v. Winzer,* 109 Kan. 647, 202 Pac. 80), and

it is doubtful if he was entitled to litigate that claim in the first instance in any other forum.

We do not discern any significance in the trial court's findings of fact filed three weeks after judgment. If plaintiffs had been dissatisfied with those belated findings they could scarcely complain of them, since they already had their judgment; and neither those findings nor the trial court's conclusion of law based thereon gave plaintiffs any reason to suppose they were to be stripped of any part of their judgment of February 28. In this record it is not easy to discover any reason to make an exception to the general rule that after the term a trial court has no power to alter a judgment, nor to permit the issues adjudicated in that judgment, or which should have been adjudicated therein (*Levi v. Levi,* 149 Kan. 234, 237, 86 P. 2d 473), to be relitigated after the term except as authorized by the civil code (*Bigler v. Goltl,* 145 Kan. 191, 195, 64 P. 2d 39). The trial court's order of April 4, 1938, which was the first day of a later term of court, giving defendant ten days to file an amended petition presents a procedural impassé manifestly difficult to circumvent. (*Thornton v. Van Horn,* 140 Kan. 568, 37 P. 2d 1015.)

The want of a brief in behalf of appellee constrains us to refrain from making any positive ruling on the foregoing legal questions, since the last and simplest point urged by appellants will effectively dispose of this appeal. That point is predicated on the fact that there was no evidence in the record on which to base a judgment in favor of defendant for $930 or any other sum. Before counsel for defendant retired from this case they filed a counter abstract in an effort to meet the challenge of a total want of evidence on the point. It contains excerpts of testimony of witnesses to the effect that the sort of services defendant and defendant's wife rendered to the testator "were of more value than those of a common farm hand." But what was the value of a common farm hand's services, or how much more valuable than a common farm hand's services were the services of plaintiff and wife was not shown. So appellants' contention that the judgment was wholly without support in the evidence, even if a legal claim therefor had been regularly and timely presented in the proper forum, must be sustained.

The judgment is therefore reversed and the cause remanded with instructions to render final judgment for plaintiffs.